## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

DEBRA GORDON-LEONARD    :
1015 Park Court             :
Cinnaminson, NJ 08077     :
                      :    CIVIL ACTION
       Plaintiff,     :
    v.              :    No.:
                      :
SODEXO, INC.          :
9801 Washingtonian Blvd.  :
Gaithersburg, MD 20878   :
     and           :
THE WOOD COMPANY    :    **JURY TRIAL DEMANDED**
9801 Washingtonian Blvd.  :
Gaithersburg, MD 20878   :
                      :
     Defendants.    :

## CIVIL ACTION COMPLAINT

Plaintiff, Debra Gordon-Leonard (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.    Plaintiff has initiated this action to redress violations by Sodexo, Inc. and The Wood Company (hereinafter collectively referred to as "Defendants") of the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 *et. seq*.), and the New Jersey Law Against Discrimination ("NJ LAD"). Plaintiff was unlawfully terminated by Defendants, and she suffered damages more fully described/sought herein.

## JURISDICTION AND VENUE

2.    Plaintiff resides in and is a citizen of New Jersey.

3.    Upon information and belief, Defendant Sodexo, Inc. is incorporated under the laws of Delaware with headquarters and/or principal place of business in Maryland, rendering it a citizen of Delaware and Maryland.

4.      Upon information and belief, Defendant The Wood Company is incorporated under the laws of Pennsylvania with headquarters and/or principal place of business in Maryland, rendering it a citizen of Pennsylvania and Maryland.

5.      This Court, in accordance with 28 U.S.C. § 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of New Jersey, and Defendants are citizens of Delaware, Pennsylvania and Maryland, and the amount in controversy exceeds $75,000.

6.      This action is also being initiated pursuant to federal law(s) (ADA) and therefore, the United States District Court for the District of New Jersey also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States.  This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

7.      This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

8.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the District of New Jersey.

9.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC").  Plaintiff has properly exhausted her

administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

10.     The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

11.     Plaintiff is an adult who resides at the above-captioned address.

12.     Defendant Sodexo, Inc., a Delaware Corporation, provides catering, facilities management (including educational institutions), employee benefits and personal home services to 100 million consumers daily in 53 countries, with headquarters at the above-captioned address. Sodexo, Inc. is listed as Plaintiff's employer on her paystubs with the above-captioned address.

13.     Defendant The Wood Company, a Pennsylvania Corporation and subsidiary of Sodexo, Inc., operates restaurants and provides food service management to businesses, educational institutions, hospitals, healthcare facilities, and retirement communities in the United States (including New Jersey).   The Wood Company is listed as Plaintiff's employer on her paystubs with the above captioned address.

14.      Plaintiff worked for Defendants for their account with Cinnaminson Township Public Schools, 1197 Riverton Rd., Cinnaminson, New Jersey.

15.     Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they may be treated as a single and/or joint employer for purposes of the instant action.

16.     At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

17.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

18.     Plaintiff was employed by Defendants as a Food Service Worker for approximately two months, beginning or about August 31, 2022, until her unlawful termination (discussed further *infra*) on or about October 28, 2022.  Specifically, Plaintiff was placed by Defendants to work for their client Cinnaminson Middle School, located at 312 Forklanding Rd, Cinnaminson, NJ 08077.

19.     Plaintiff was directly supervised by Defendants' Lead Food Worker, Deb Young (hereinafter "Young"), and generally supervised by Defendants' General Manger, Lisa Friedrich (hereinafter "Friedrich").

20.     Throughout her employment with Defendant, Plaintiff was a hard-working employee who performed her job well.

21.     Plaintiff has and continues to suffer from several ADA-qualifying disabilities, including heart conditions and those affecting the endocrine system (*i.e.*, diabetes), among other related health conditions.

22.     Despite these disabilities, Plaintiff was able to perform her job well, however, she (at times) needed some reasonable medical accommodations (set forth *infra*).

23.     At all times relevant hereto, Defendants' management was aware of Plaintiff's aforesaid health conditions and need for accommodations.

24.     For example, shortly after her hire, Plaintiff informed Young that she had health concerns that required periodic breaks (*i.e.,* to maintain and monitor her blood sugar), but Plaintiff

was advised that employees do not take any breaks, instead they work through the day without breaking so that they can leave a little earlier.

25.    When Plaintiff asked Young if that included employees with health conditions, Young replied there were no exceptions.

26.    Additionally, the kitchen area was incredibly hot, as Plaintiff and other employees were in a room with little ventilation and several ovens.   While there were several fans around the room, whenever Plaintiff turned them on, as the sweltering heat affected her aforesaid serious health conditions, Young would regularly go behind Plaintiff and turn the fans off.

27.    Young showed extreme hostility and frustration with Plaintiff's health conditions and requested accommodations.

28.    For example, Plaintiff and other employees periodically snacked during the day, as they were given no breaks, and Plaintiff needed to maintain her blood sugar.

29.    At one point in September of 2022, Young called a meeting, and while looking directly at Plaintiff, informed all employees that they were no longer allowed to snack on cucumber or other food.    As a result, Plaintiff had no choice but to bring in protein shakes to maintain her blood sugar (which had become erratic as a result of the failure to take breaks and the extremely uncomfortable temperature), as they were somewhat permitted to have liquids on limited occasions.

30.    During the first week of her employment, Plaintiff also sustained a work-related injury to her finger, when cleaning the warming unit.

31.    Plaintiff reported the cut to Young, who was clearly irritated.   Plaintiff then requested a first aid kit, but Defendants had no emergency kits or other first aid supplies in the kitchen.  Another employee handed Plaintiff a band aid, but she could not stop the bleeding.

32.     After work, Plaintiff was able to seek help with her daughter, who applied a pressure bandage and helped Plaintiff to clean it, but the injury continued to bleed and cause Plaintiff pain for several days.   Young, however, refused to provide Plaintiff with any assistance and upon information and belief failed to report the injury.

33.     Thereafter in or about the week of September 12, 2022, Plaintiff injured her back (including a pinched nerve) outside of work.

34.     Despite that Plaintiff was suffering from pain, mobility issues, and discomfort as a result of her aforesaid back injury, Plaintiff continued to do her job very well, coming in to work each day, because she was fearful of losing her job position.

35.     It was easily observable to Young and other employees, however, during this time period that Plaintiff was being careful with how she walked (as the floor in the kitchen sloped for water drainage), and Plaintiff used tables as support, upon occasion.

36.     On one occasion, Plaintiff sat down for just 5-8 minutes to briefly rest her back, while other employees were standing around playing on their phones.   However, Young immediately advised Plaintiff that she had to get up and go back to work, despite being aware of Plaintiff's back and other health conditions, while allowing the other employees to continue not working and playing on their phones.

37.     The following week, Friedman came to Plaintiff to inform her that Young had advised Friedman that Plaintiff was holding on to counters and moving in an "unsafe" manner around the kitchen.

38.     While Plaintiff did on occasion use counters and tables to balance herself briefly, Plaintiff was able to do all the duties of her job well each day and on time, in a completely safe manner.

39.     Plaintiff disputed that she was acting in any way unsafe to Friedman and Young, however, Young continued to subject Plaintiff to hostility and animosity in clear distaste for her health conditions and in retaliation for her needed accommodations.

40.     In or about the month of October of 2022, Plaintiff continued to perform her job well, while attending physical therapy 2x a week (which Plaintiff scheduled around work hours), however, she was still not provided with any breaks as needed for her health conditions, and the sweltering heat was unbearable, with most employees walking into the deep refrigerator to cool down.

41.     Moreover, whenever there was a minute of down time between serving lunches, that Plaintiff could take a quick break for a drink or to rest, Young added more work duties for Plaintiff so that she was unable to monitor/maintain her serious health conditions.

42.     Thereafter, in or about the 3rd week of October of 2022, a student set off a firework just a few feet from Plaintiff while she was in line for lunch, which made several employees, including Plaintiff jump and become alarmed.  This severely aggravated Plaintiff's heart condition, which is controlled by medication.

43.     When Plaintiff reported the aforementioned firework incident to Young, Young told Plaintiff to just finish working.

44.     The following day, while still suffering from the physical effects of the firework incident on her serious health conditions, Plaintiff reached out to School Resource Officer, Richard Gunner (hereinafter "Gunner") to inquire about the incident and the dangerous nature of the same to both employees and students.

45.     Young saw Plaintiff talking to Gunner, and hostilely asked her what she was doing. When Plaintiff advised Young that Young had failed to report the firework incident, which was a

safety concern that had impacted Plaintiff's health and the well-being of others, Plaintiff was verbally reprimanded and advised to return to work.

46.     Plaintiff then abruptly terminated just two days later, on or about October 28, 2022, by phone, for completely pretextual reasons – including the petty reason of purportedly eating a slice of cucumber in front of a teacher on one occasion several weeks earlier (while several other employees had snacked on food on multiple occasions without discipline or termination) and despite that plaintiff needed small snacks periodically to maintain her blood sugar.

47.     Plaintiff was then subsequently provided with a termination notice with an entirely different reason for her termination[1] – which included reporting the aforesaid safety concern (firework incident), as a result of its impact on her health conditions and the well-being of students and employees to the School Resource Officer.

48.     During Plaintiff's employment with Defendants, Defendants failed to properly accommodate Plaintiff by refusing to allow her brief breaks as needed for her health conditions and by refusing to allow her the ability to use fans to combat the sweltering heat in the kitchen that affected her health conditions.   These accommodations were very simple, reasonable, and easy to accommodate.

49.     Plaintiff believes and therefore avers that she was subjected to retaliation and a hostile work environment because of (1) her known and/or perceived health problems; (2) her

---

[1] The Third Circuit has stated that inconsistent reasons given by the employer for terminating an employee constitutes circumstantial evidence of pretext. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 792 (3d Cir. 2016)(*citing Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir.2007)); *see also Broady v. ABM Janitorial Servs.*, 2015 U.S. Dist. LEXIS 15722 (E.D. Pa. 2015)(denying summary judgment and explaining inconsistencies or contradictions in an employer's defense will sufficiently establish pretext, citing, Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3d Cir. 1997) (en banc)(quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)); *Fabrizio v. UPMC*, 2012 WL 3929213, at *4 (W.D. Pa. 2012)(denying summary judgment in age discrimination case explaining there are sufficient inconsistencies when the evidence supports an employer initially claimed the plaintiff's job was "eliminated" but then later engaged in a litigation defense of misconduct);

record of impairment; (3) her requested accommodations (which constitutes illegal retaliation); and (4) Defendants' failure to properly accommodate her (set forth *supra*).

50.     Plaintiff further believes and therefore avers that her disabilities were a motivating/determinative factor in the termination of her employment with Defendants.

**COUNT I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**(1] Actual/Perceived/Record of Disability Discrimination; [2] Hostile Work Environment;**
**[3] Retaliation; and [4] Failure to Accommodate)**
**-Against Both Defendants-**

51.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52.     Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

53.     Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendants, however, Plaintiff did require reasonable medical accommodations at times.

54.     Plaintiff requested reasonable accommodations from Defendants, including but not limited to brief breaks as needed for her health conditions and the ability to use fans to combat the sweltering heat in the kitchen that affected her health conditions.

55.     Defendants failed to properly accommodate Plaintiff by refusing to allow her brief breaks as needed for her health conditions and by refusing to allow her the ability to use fans to combat the sweltering heat in the kitchen that affected her health conditions.

56.     Instead, Plaintiff was terminated, on or about October 28, 2022, in close temporal proximity to requesting/utilizing accommodations for her own health conditions.

57.     Plaintiff believes and therefore avers that she was subjected to retaliation and a hostile work environment because of (1) her known and/or perceived health problems; (2) her

record of impairment; (3) her requested accommodations (which constitutes illegal retaliation); and (4) Defendants' failure to properly accommodate her (set forth *supra*).

58.    Plaintiff further believes and therefore avers that her disabilities were a motivating/determinative factor in the termination of her employment with Defendants.

59.    Defendants' actions as aforesaid constitute violations of the ADA.

**COUNT II**
**Violations of the New Jersey Law Against Discrimination ("NJ LAD")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Hostile Work Environment; and [4] Failure to Accommodate)**
**-Against Both Defendants-**

60.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61.    Plaintiff reasserts each and every allegation from Count II, as such actions in this case constitute identical violations of the NJ LAD.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.    Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

C.    Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress/pain and suffering);

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law; and

F.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.


                                        Respectfully submitted,

                                        **KARPF, KARPF & CERUTTI, P.C.**

                        By:     _____
                                        Ari R. Karpf, Esq.
                                        3331 Street Road
                                        Two Greenwood Square, Suite 128
                                        Bensalem, PA 19020
                                        (215) 639-0801
                                        *Attorneys for Plaintiff*

Dated:   August 30, 2023